| | |
|---|---|
| JENNIFER CAMPBELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:07-0558 |
| ) | JUDGE ECHOLS |
| PROMETHEUS LABORATORIES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM

Pending before the Court is Defendant Prometheus Laboratories, Inc.'s Motion To Dismiss Plaintiff's Complaint (Docket Entry No. 22), and Plaintiff's Motion For Leave To Amend Complaint (Docket Entry No. 33). The parties have responded in opposition to these motions.

Invoking this Court's federal and diversity jurisdiction, Jennifer Campbell ("Plaintiff") alleged in the Complaint that Prometheus Laboratories, Inc., ("Defendant") discriminated against her on the basis of disability when Defendant terminated her employment effective October 2, 2006, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. ("the ADA"), and the California Fair Employment and Housing Act ("FEHA"), Gov't Code § 12940. She also alleged that Defendant breached her employment contract. Defendant moved to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In conjunction with her response to the motion to dismiss, Plaintiff moved to amend her Complaint to address certain pleading deficiencies identified by Defendant. The Court will analyze the motion to dismiss in view of the facts alleged in the Complaint, and the Court will then consider whether the proposed amendment to the Complaint should be permitted.[1]

---

[1] Ordinarily, matters outside the pleadings may not be considered in ruling on a Rule 12(b)(6) motion unless the motion is converted to one for summary judgment under Federal Rule of Civil Procedure 56. Weiner v. Klais and Co., 108 F.3d 86, 89 (6th Cir. 1997). Any exhibit that is attached to the Complaint is considered a part of the pleadings, however, and a defendant may attach

1

## I. FACTS

Plaintiff is a resident of Gallatin, Tennessee. Defendant is a foreign corporation with its principal place of business in California. (Docket Entry No. 1, Complaint ¶¶ I-II.) On February 21, 2006, Defendant hired Plaintiff into the position of Technical Sales Specialist ("TSS") for the Nashville, Tennessee, territory to sell its products to medical professionals. (Id. ¶ VI, Ex. G.) At the time of her employment, Plaintiff and Defendant's Senior Manager for Human Resources, Maria DeSantis, signed an offer letter. (Id. Ex. G.) The offer letter set forth the terms of Plaintiff's employment, including that the employment relationship was "at-will," meaning that Plaintiff and the company each retained the right to terminate Plaintiff's employment at any time for any reason. (Id. Ex. G at 2.) Plaintiff was required to drive to the locations where she would make sales calls, and the offer letter provided that, if she were eligible, a company car would be provided to her; otherwise, a rental car or car allowance would be provided. (Id., Ex. G at 1.)

Plaintiff worked approximately seven (7) months as an excellent employee. (Id. ¶ IX.) In July 2006, Plaintiff suffered one episode of major seizures. (Id. ¶ X.) Plaintiff's seizure disorder prevented her from driving a car for six (6) months from July 2006 to January 2007. (Id. ¶ VIII.) During the first two weeks of August 2006, Plaintiff's husband, Jeremy Campbell, drove Plaintiff to the places where she made sales calls for Defendant. (Id. ¶ XI.) During another period of time, employee trainees of the Defendant drove Plaintiff to her sales calls while she was training them for the Defendant. (Id.)

Plaintiff remained willing and able to work with this accommodation until she could drive again, but the Defendant informed Plaintiff that she was fired due to her disability. (Id. ¶ XII; Exs. E-F.) In a letter to Plaintiff dated August 7, 2006, DeSantis informed Plaintiff that the company would allow technical services representatives to drive Plaintiff to her sales calls through

---

documents to a motion to dismiss if the documents are referred to in the complaint or if they are central to the plaintiff's claim. Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999); Weiner, 108 F.3d at 89.

2

September 15, 2006, even though Plaintiff was "not able to fulfill the essential function of driving for your job with us[.]" (Id., Ex. E at 1.) The letter further provided:

> By mid-September, you should have the results of all your medical diagnostic tests which will help us determine the length of your driving restrictions and your ability to work on your own. We hope you understand that we cannot in any way guarantee your job or leave the territory open and hold your position for you for the six-month period of time that your doctor has originally indicated you cannot drive.
>
> Assuming you are still on driving restrictions in mid-September which, as you mentioned, is very likely, you would be placed on a leave of absence until September 22, 2006. On that date, your employment would then terminate. You would, however, be eligible for Short Term Disability (STD) benefits for a period of three months assuming we receive the appropriate documentation from you and your physician. At the conclusion of that three month period you would then be eligible to apply for Long Term disability benefits through Prudential.
>
> Should your employment terminate on September 22, your health insurance benefits would remain at the same cost through the end of September. After that time, you would be eligible to apply for COBRA benefits at the COBRA rate.
>
> I have received your Short Term Disability paperwork. If it is determined that you cannot return to work, we will process the application at that time.

(Id., Ex. E at 1-2.) Plaintiff's employment actually terminated effective October 2, 2006, and Defendant's Senior Benefits Administrator, Nancy Danez, stated in a letter to Plaintiff on that date that Plaintiff's "association with the company has ceased for reason of Disability." (Id., Ex. F.)

Following her termination, Plaintiff filed a charge on December 14, 2006, with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination from July 25, 2006 to October 2, 2006. (Id., Ex. A.) She received a right-to-sue letter in March 2007, in which the EEOC determined that Plaintiff's allegations did not involve a disability as defined under the ADA. (Id., Ex. B.) In April 2007 Plaintiff also filed a discrimination charge under the California Department of Fair Employment and Housing Act ("FEHA") and requested an immediate right-to-sue letter, which she received. (Id., Exs. C-D.)

Plaintiff alleged in her Complaint that, at all relevant times, she was a "disabled" individual or she was perceived to be a disabled individual within the meaning of the ADA and/or the FEHA. (Id. ¶ VIII.) Plaintiff alleged further that, during the period of her employment, she demonstrated she could work despite her disability, and Defendant demonstrated it could accommodate her

3

disability by allowing Jeremy Campbell to drive Plaintiff to her sales calls in his personal vehicle. Plaintiff alleged this accommodation did not substantially interfere with her work performance. (Id. ¶ IX.) Plaintiff also alleged that Defendant could have reasonably accommodated her seizure disorder without enduring hardship by allowing Jeremy Campbell to drive Plaintiff during the period she was medically unable to drive due to her seizure disorder. (Id. ¶ XIII.)

Plaintiff asserted that the real reason for her discharge was: (A) her disability; (B) her history of having a disability due to her seizure disorder; and (C) Defendant's perception that Plaintiff's seizure disorder was a disability which prohibited her from working and/or driving. Therefore, Plaintiff claimed that the Defendant violated the ADA and the FEHA. (Id. ¶¶ XIV-XV.) Plaintiff further alleged that her discharge violated her employment contract in that she was entitled to a bonus of an additional $34,000 for the last quarter and for the year. (Id. ¶ XVI.) Plaintiff requested compensatory, liquidated, and punitive damages; front pay, back pay and unpaid bonuses; reinstatement with reasonable accommodation; and attorney's fees.

## II. STANDARD OF REVIEW

In evaluating the Complaint under Rule 12(b)(6), the Court must accept as true all of Plaintiff's allegations and resolve all doubts in Plaintiff's favor. See Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987). While a complaint need not contain detailed factual allegations, the Plaintiff must provide the grounds for her entitlement to relief, and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. —, 167 L.Ed.2d 929, 940 (2007) (abrogating Conley v. Gibson, 355 U.S. 41 (1957)). The factual allegations supplied must be enough to show a plausible right to relief. Id. at 940-942. A complaint must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory. Id. at 944; Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).

4

Case 3:07-cv-00558   Document 49   Filed 01/28/08   Page 4 of 14 PageID #: 359

### III. ANALYSIS

**A. The ADA claim**

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* ADA case, Plaintiff must show (1) that she is an individual with a disability, (2) who was otherwise qualified to perform her job's requirements, with or without reasonable accommodation, and (3) who was discriminated against solely because of the disability. See Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir. 2002).

A threshold question raised in Defendant's motion to dismiss is whether Plaintiff is an individual with a disability within the meaning of the ADA. To be "disabled" for purposes of the ADA, an individual must (1) have a physical or mental impairment which "substantially limits" her in at least one "major life activity," or (2) have a record of such an impairment, or (3) be regarded as having such an impairment. See 42 U.S.C. § 12102(2). The term "substantially limits" means the disability affects activity to a considerable or large degree. Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 122 S. Ct. 681, 691 (2002). Major life activities are of central importance to daily life and include caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i); Workman v. Frito Lay, Inc., 165 F.3d 460, 467 (6th Cir. 1999). These terms are to be interpreted strictly to create a demanding standard for a person to qualify as "disabled." Williams, 122 S.Ct. at 689. There is no blanket rule to use to determine whether a claimant is disabled. "Congress intended the existence of a disability to be determined in . . . a case-by-case manner." Id. at 692. The determination as to whether an individual is substantially impaired in a major life activity is made as of the time that the adverse employment decision was taken. Kocsis v. Multi-Care Mgt., Inc., 97 F.3d 876, 884 (6th Cir. 1996).

*1. Plaintiff's Complaint*

Plaintiff cannot allege facts to show that she is a qualified individual with a disability. Plaintiff alleged in her Complaint that she experienced one episode of seizures in July 2006, but she

5

did not specify any major life activity, such as caring for herself, performing manual tasks, walking, seeing, hearing, speaking, breathing, or learning, that was substantially impaired by her seizure disorder. The only reference to major life activities Plaintiff made in her Complaint was in conjunction with her "regarded as" theory, when she alleged that Defendant held a "perception that Plaintiff's seizure disorder was a disability which prohibited her from working and/or driving." Although Plaintiff included this allegation only in connection with her "regarded as" theory, the Court will nonetheless assume the allegation also applies to Plaintiff's claim that she is disabled within the meaning of the ADA, that is, she is a qualified individual with a disability.

"When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999). Under the EEOC regulation, a plaintiff must allege that she is

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(I); Sutton, 527 U.S. at 491; Burns v. Coca-Cola Enter., Inc., 222 F.3d 247, 253 (6th Cir. 2000).

Plaintiff did not include any such factual allegations in her Complaint. Plaintiff alleges that she was an excellent employee who could meet the demands of her sales position even after the seizure disorder appeared, with the exception that she could not drive for a six-month period as directed by her doctor. She does not allege that she could not perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.

Further, suffering occasionally from seizures, especially if the seizures can be controlled by medication, is not recognized as a disability under the ADA. See e.g. Cash v. Smith, 231 F.3d 1301, 1306 (11th Cir. 2000). Plaintiff does not allege that she was diagnosed with epilepsy before her termination in 2006, a condition which does qualify as a disability under the ADA. See 29 C.F.R.

6

§ 1615.103(1)(ii) (including "epilepsy" in the definition of "physical or mental impairment"); Lovejoy-Wilson v. Noco Motor Fuel, Inc., 263 F.3d 208, 216 (2nd Cir. 2001).

Further, an inability to drive due to a seizure disorder does not qualify an individual as disabled under the ADA. See Chenoweth v. Hillsborough County, 250 F.3d 1328, 1329 (11th Cir. 2001) (noting "driving" is not only absent from the statutory list of major life activities, but driving is "conspicuously different in character from the activities that are listed."); Colwell v. Suffolk County Police Dept., 158 F.3d 635, 643 (2nd Cir. 1998) (driving is not a major life activity); Robinson v. Lockheed Martin Corp., 212 Fed.Appx. 121 (3rd Cir. 2007) (unpublished) (same). Thus, Plaintiff has not adequately stated facts to support a claim that she has a physical or mental impairment which "substantially limits" her in at least one "major life activity."

Alternatively, to establish a *prima facie* case, a plaintiff may be able to allege facts to show that she has a record of an impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(2)(B). This provision is intended "'to ensure that people are not discriminated against because of a history of disability.'" Colwell, 158 F.3d at 645 (quoting 29 C.F.R. pt. 1630 App., § 1630.2(k)). The regulation provides:

> This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities.

29 C.F.R. pt. 1630 App., § 1630.2(k).

Plaintiff has not alleged in her Complaint that she had a history of disability and that her employer improperly discriminated against her based on that history. See Colwell, 158 F.3d at 645. Thus, this theory fails as well.

Finally, Plaintiff's third alternate theory is that Defendant regarded her as having an impairment considered disabling under the ADA. There are two ways a plaintiff can proceed on a "regarded as disabled" theory. First, a plaintiff can allege that her employer was under the mistaken belief that she was disabled, when in fact she was not. Sutton, 527 U.S. at 489. Second, a plaintiff can allege that she actually has a physical impairment, and the employer knows of it, but the

7

employer mistakenly believes that the plaintiff is disabled because of the impairment when in fact she is not. Id.; EEOC v. Watkins Motor Lines, Inc., 463 F.3d 436, 443 (6th Cir. 2006). "In both cases, it is necessary that a covered entity entertain misperceptions about the individual–it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." Sutton, 527 U.S. at 489. Congress adopted this part of the statute to combat the effects of employers' erroneous fears and stereotypes about disabled individuals. Id.

Plaintiff did not allege in the Complaint facts to support either of these two methods of proof to proceed on the "regarded as disabled" theory. The Complaint alleged that "[t]he real reason for Plaintiff's discharge was: . . . (C) Defendant's perception that Plaintiff's seizure disorder was a disability which prohibited her from working and/or driving." (Complaint ¶ XIV.) Under Sutton, however, Defendant's perception must have been a *mistaken* perception. The Complaint contains absolutely no factual allegations elucidating Defendant's *mistaken* belief that Plaintiff's seizure disorder was a disability which prohibited her from engaging in the major life activity of working. This theory might have application if Plaintiff had alleged that Defendant denied her employment on a mistaken belief that she was unable to fulfill the requirements of the position for which she applied. But here, Plaintiff alleges that she was hired, that she worked for several months as an excellent employee, and that she continued to work for the Defendant even after her seizure disorder first appeared.

Additionally, Plaintiff did not allege, nor does it appear she could allege, that Defendant *mistakenly* believed Plaintiff was disabled due to a substantial limitation on her ability to drive when in fact she was not so limited. Plaintiff *was* limited in her ability to drive on orders of her physician. Defendant was not mistaken about that fact. Because the Complaint alleges that both Plaintiff and Defendant knew of the actual six-month driving restriction, Plaintiff cannot proceed on a theory that Defendant mistakenly thought Plaintiff was limited in her driving.

Plaintiff has not alleged that, at the time of her termination on October 2, 2006, she was unable to work in a broad class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities, 29 C.F.R. § 1630.2(j)(3)(i); Burns, 222 F.3d at 254 (and cases cited therein), nor has she properly alleged that at the time of her termination she had a record of such impairment or that Defendant regarded her as having such an impairment. For these reasons, Plaintiff fails to state a claim under the ADA.

*2. Plaintiff's proposed amendments to the ADA claim*

Plaintiff's proposed amendments to her Complaint will not resolve the deficiencies noted. Plaintiff proposes to add more detail about her medical condition in paragraph VIII of the Complaint. That paragraph as amended would state in pertinent part:

> Specifically, Plaintiff suffers from a seizure disorder. She has had recurrent periods of vertigo and hazy thinking for a year before they were diagnosed as seizures. Dr. Cruz, her initial neurologist, on July 26, 2006 ordered her to not drive and to avoid any potentially dangerous activities that may result in injury to herself or others. Dr. Cruz initially prevented her from driving a car for periods of time, including six (6) months from July, 2006 to January, 2007. Dr. Rutland, her current neurologist, has prohibited her from driving, operating heavy or hazardous machinery and from working under the following environmental restrictions: heights, moving machinery, temperature extremes, chemicals, and fumes from January 2007 and August 2007. (sic) The disability substantially limits her in the major life activity of working and has now for over one year. Her restrictions prevent her from working a broad range or class of jobs.

The new allegations that Plaintiff experienced periods of vertigo and hazy thinking before she suffered the July 2006 episode of seizure activity does not change in any way the Court's analysis above that Plaintiff failed to allege facts showing she had a disability that substantially limited a major life activity at the time her employment was terminated in October 2006. At most, these facts add some context to the onset of Plaintiff's medical condition. Plaintiff does not allege that Defendant knew about her periods of vertigo and hazy thinking or that her ability to work or drive was in any way affected by vertigo and hazy thinking before July 2006. The additional facts about the initial driving restriction imposed by Dr. Cruz also do not change the Court's analysis.

It is not relevant to the ADA analysis that Plaintiff's driving restriction apparently extended into 2007 and that her current neurologist has imposed additional restrictions. The Court must

consider only what the employer knew on October 2, 2006, when it discharged Plaintiff from employment. See Kocsis, 97 F.3d at 884. Plaintiff's proposed allegations that "[t]he disability substantially limits her in the major life activity of working and has now for over one year[,]" and "[h]er restrictions prevent her from working a broad range or class of jobs, appear to be directed to the present time, and not to October 2006 when Defendant took adverse employment action against the Plaintiff. Such allegations are not relevant. Even if they were, they contradict other factual allegations Plaintiff retains in the proposed Amended Complaint (paragraph IX) that as of the time of her termination, she could perform all of the essential functions of her job (and presumably many other jobs) with the exception that she could not drive for a limited period. While it may be that Plaintiff's medical condition unfortunately worsened after October 2006, such a development is not pertinent to the Court's analysis of whether the Defendant violated the ADA on October 2, 2006.

Another proposed amendment is that in paragraph X Plaintiff would change the sentence "Plaintiff only had one episode of major seizures during the seven and one-half months (7 ½) she was employed with Defendant[,]" to: "Plaintiff suffered regularly with seizures but only had one episode of tonic clonic seizure during the seven and one-half months (7 ½ ) she was employed by the Defendant." Again, this proposed change would not alleviate any of the problems noted in the Court's analysis above.

The last proposed amendment concerning the ADA (aside from clarifying language in paragraph IX and incorporation by reference of exhibits attached to the Complaint in paragraph XII), appears in paragraph XIV, where Plaintiff would state that the real reason for her discharge was: "A. Plaintiff's disability of a seizure disorder which substantially limits her in the major life activity of working and/or is limited in a major life activity of working and driving[.]" The Court previously analyzed whether Plaintiff could state an ADA claim where the substantial limitation asserted was in the major life activities of working and driving. The Court concluded that Plaintiff failed to state a claim. The Court finds that it would be futile to allow Plaintiff to amend her Complaint to make these proposed changes to her ADA claim.

10

### B. The FEHA claim

The California FEHA was enacted for the benefit of California citizens and it is not to be construed to apply to nonresidents employed outside the State of California when the tortious conduct did not occur in California. Campbell v. Arco Marine, Inc., 50 Cal. Rptr. 2d 626, 632-633 (Cal. Ct. App. 1996) ("Without clearer evidence of legislative intent to do so than is contained in the language of the FEHA, we are unwilling to ascribe to that body a policy which would raise difficult issues of constitutional law by applying this state's employment-discrimination regime to nonresidents employed outside the state."). There is some authority, however, that a non-resident may sue under the FEHA in California court if the tortious conduct occurred in California. See e.g. Dodd-Owens v. Kyphon, Inc., 2007 WL 420191 (N.D. Cal. Feb. 5, 2007); Roger-Vasselin v. Marriott Int'l, Inc., 2006 WL 2038291 (N.D. Cal. July 19, 2006). Plaintiff has not cited any case recognizing the authority of a federal district court outside of California to apply California's FEHA to one who is not a California resident.

Even assuming the Court may exercise jurisdiction over this claim, Plaintiff's Complaint contains bare allegations that "Defendant through its Human Resources Department made the determination to terminate Plaintiff in San Diego, California[,]" and that the employment contract between the parties was to be governed by and construed under California law as if the agreement were performed entirely in California between California residents. (Complaint ¶ VII.) The Court concludes that these minimal and conclusory allegations are insufficient to show that Plaintiff has a plausible right to relief under the FEHA. See Bell Atlantic Corp., 550 U.S. —, 167 L.Ed.2d at 940. Plaintiff seeks to amend her Complaint so that paragraph VII reads as follows:

> Defendant through its Human Resources Department made the determination to terminate Plaintiff in San Diego, California. Maria DeSanctis (sic) in the Human Resource Department made the decision to terminate Plaintiff from her location in California. That Nancy Danez, Senior Benefits Administrator for Prometheus, ratified from California the decision to terminate Plaintiff from her location in California. The employment contract stipulated that:
>
> > This agreement will be governed by and construed according to the laws of the State of California, as such laws are applied to agreements

11

>     extended into and to be performed entirely within California between
>     California residents.
>
>     The employment contract also mentioned and was governed pursuant to California laws. The notification of dismissal for disability came from another employee in California. All of these facts regarding the employment contract and the termination of that contract allow this action to be maintained under the California Fair Employment and Housing Act.

(Docket Entry No. 33-2, Proposed Amended Complaint.)

It would be futile to allow Plaintiff to amend her Complaint in this way. Plaintiff's proposed amendment does not allege sufficient facts to show how the making and approval of a decision to terminate Plaintiff's employment in California constitutes a violation of FEHA. It is not relevant to the FEHA analysis that Plaintiff's offer letter stated it was governed by California law, that the offer letter was signed in accordance with the California Labor Code, or that Defendant considered Plaintiff's eligibility for leave under the California Family Rights Act. The issue is whether Plaintiff states a claim under FEHA, and the Court holds she has not alleged sufficient facts to set forth such a claim, even if her Complaint is amended as she proposes. Moreover, like the ADA, the FEHA does not "provide statutory protection to persons whose conditions have rendered them unable to meet their employer's requirements for a particular job, but who are otherwise physically able to work elsewhere in their chosen profession." Maloney v. Anr Freight Sys., 16 Cal. App. 4th 1284, 1287 (Cal. Ct. App. 1993). For the same reasons Plaintiff's ADA claim fails, her FEHA claim fails.

## C. The breach of contract claim

Plaintiff alleges that the offer letter she and DeSantis signed in February 2006 (Complaint Ex. G) constitutes an employment contract. The letter set forth in detail the terms of Plaintiff's employment. The letter then stated in pertinent part:

>     This letter, together with your Proprietary Information and Inventions Agreement and the Policies & Procedures, forms the complete and exclusive statement of the terms of your employment with the Company. The employment terms in this letter supersede any other agreements or promises made to you by anyone, whether oral or written. . . . This Agreement will be binding upon your heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

(Ex. G at 2.) At the conclusion of the letter, DeSantis instructed Plaintiff: "Please sign, date and return this letter as soon as possible if you wish to accept employment with the Company under the terms described above." (Ex. G at 3.)

The Court agrees with Plaintiff that the signed offer letter constitutes a contract of employment. However, the parties expressly agreed in the contract that Plaintiff would be employed at-will for an indefinite term. Thus, Plaintiff's employment could be terminated at any time for any reason by either party. See Dore v. Arnold Worldwide, Inc., 139 P.3d 56, 59-61 (Cal. 2006); Guy v. Mutual of Omaha Ins. Co., 79 S.W.3d 528, 535 (Tenn. 2002).

As to bonuses, the offer letter stated:

> You will participate in a bonus and sales commission program in which payouts under the current program are made during the month following the close of each quarter. You will be eligible for this program on your first full day in this role. Details regarding this program will be provided to you during orientation.

(Ex. G at 1.) The parties' agreement did not explicitly specify whether Plaintiff would be entitled to bonuses in the event her employment were terminated at will.

Defendant presents a copy of the "Technical Sales Specialist 2006 Incentive Compensation Guidelines."[2] (Docket Entry No. 32-3.) The Incentive Compensation Guidelines provided: "Involuntary Termination: In order to be eligible to receive bonus under the Incentive Compensation Plan, a sales employee must be actively employed with [Defendant] at the time incentive compensation checks are issued." (Id. at 14.) The document further provided that the projected pay date for bonuses for the third quarter of 2006 was December 1, 2006, and for the fourth quarter of 2006 was February 23, 2007. (Id. at 12.)

Plaintiff's employment with the Defendant ended effective October 2, 2006. Therefore, Plaintiff was not employed with Defendant on December 1, 2006 to receive any bonus payout for the third quarter, nor was she employed with Defendant on February 23, 2007, to receive a bonus payout for the fourth quarter. Because Plaintiff was not employed on the applicable payout dates, she was ineligible under the terms of the plan to receive bonuses.

---

[2] Although this document is not mentioned by name in the Complaint or in the offer letter attached to the Complaint, the offer letter references details of the bonus and sales commission program to be provided to Plaintiff at orientation, and the document is central to Plaintiff's breach of contract claim. See Jackson, 194 F.3d at 745. Thus, the Court does not believe that it converts the motion to dismiss to one for summary judgment by considering the contents of this document. See Weiner, 108 F.3d at 89.

13

Plaintiff alleged in her original Complaint at paragraph XVI: "Plaintiff was entitled, pursuant to her contract, to a bonus of an additional $34,000.00 for the last quarter and the year. (See Employment Contract attached hereto as Exhibit 'G.')"

Plaintiff seeks to amend her Complaint at paragraph XVI to read: "Plaintiff was entitled, pursuant to her contract, to bonuses for the last quarter and the year. (See Employment Contract attached hereto as Exhibit 'G' and incorporated herein by reference.)" (Docket Entry No. 33-2.)

Simply amending the Complaint to eliminate a specific reference to $34,000 in bonuses and to incorporate Exhibit G by reference will not alleviate the larger problem Plaintiff faces in stating a claim for breach of contract. Plaintiff's employment contract was silent on the issue whether she was eligible to receive bonuses following an involuntary termination. The contract stated that Defendant would provide Plaintiff with additional details about the bonus program during orientation. The Incentive Compensation Plan makes clear that Plaintiff was required to be employed by Defendant on December 1, 2006 and February 23, 2007 in order to receive bonus checks for the third and fourth quarters of 2006. Plaintiff's at-will employment terminated two months before the first payout date. Because Plaintiff cannot allege that Defendant was under a contractual obligation to pay her bonuses "for the last quarter and the year," Plaintiff fails to state a claim for breach of contract.

## IV. CONCLUSION

For all of the reasons stated, Defendant Prometheus Laboratories, Inc.'s Motion To Dismiss Plaintiff's Complaint (Docket Entry No. 22), will be granted. Plaintiff's Motion For Leave To Amend Complaint (Docket Entry No. 33) will be denied because granting leave to amend the Complaint would be futile. This case will be dismissed with prejudice.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE